STATE OF NORTH CAROLINA v. PAUL WILFRED JOHNSON

No. 7730SC409

(Filed 2 November 1977)

**1. Criminal Law § 163— objection to recapitulation of evidence**

   Assignments of error to the court's recapitulation of the evidence will not be considered on appeal where defendant made no objection thereto at the trial.

**2. Criminal Law §§ 101.4, 130— comments by jury officer—motion for new trial**

   A motion for a new trial based on a comment by the jury officer in the presence of one or more jurors that he was proud that the District Attorney in his argument to the jury stood up for the law enforcement officers involved in the case alleged an irregularity as contemplated by G.S. 1A-1, Rule 59(a)(1) which could have prevented defendant from receiving a fair trial, and the motion was filed within the time allowed by G.S. 1A-1, Rule 59(b) where it was filed four days after judgment was entered. Therefore, defendant is entitled to a proper hearing on the motion, after which the superior court judge should make findings of fact and determine whether there was an irregularity and, if so, whether it prevented defendant from having a fair trial. G.S. 15-174.

APPEAL by defendant from *Hasty, Judge.* Judgment entered 10 March 1977, and order entered 14 April 1977 in Superior Court, SWAIN County. Heard in the Court of Appeals 30 September 1977.

Upon a plea of not guilty defendant was placed on trial for the first-degree murder of Clyde Junior Tabor on 15 January 1977. Evidence presented by the State is summarized in pertinent part as follows:

At approximately 4:00 p.m. on said date the dead body of Tabor was found lying in the snow in the Euchella Cemetery about 25 feet from his car, the engine of which was running. There were footsteps all around the body and leading up a bank into a wooded area. There was blood under the body, on Tabor's face and between the body and the car.

The sheriff was called and as he was driving to the cemetery, he saw defendant come out of the woods with a gun strapped to his belt. The sheriff knew defendant and stopped to ask him why he was carrying a gun. Defendant told him he was hunting after which defendant accepted the sheriff's invitation to get into the car. The sheriff stated that he did not know what was going on at

the cemetery; defendant then stated that he was going to call the sheriff and turn himself in; that "[h]e (Tabor) made a phone call and was going to meet my daughter out here . . . and I told him what I'd do to him if he didn't leave us alone, and I shot him".

Upon arriving at the cemetery the sheriff learned that Tabor had been shot dead; he then took defendant to the station where he was arrested.

On the day of the shooting Tabor had visited the home of Larry Nance where he made a phone call but Nance did not hear the conversation or know whom Tabor had called. Defendant had threatened to kill Tabor on at least two prior occasions.

The sheriff traced the footsteps leading from the cemetery into the woods and found that they led to the place where he picked up defendant. While tracing the footsteps he found a rifle hidden in some bushes. An autopsy revealed that Tabor died from a rifle wound and had a blood alcohol content of .15 percent at the time of death. No weapon was found on Tabor.

Lab reports disclosed that the bullet taken from Tabor's body had been fired by the rifle recovered from the bushes; that powder burns on Tabor's tee shirt indicated that he had been shot at a distance of two to four feet from the rifle.

Defendant presented evidence which is summarized in pertinent part as follows:

He was acquainted with Tabor but had not seen him for several months prior to the date in question. On that date, defendant decided to go hunting at the cemetery and got his wife to drop him off there. He had a revolver in his belt and a rifle in his hand. He had recently undergone a cataract operation, could not see well and had been advised by his doctor not to engage in strenuous activity.

As he walked toward the woods he heard a car drive up behind him; he did not recognize the car or driver until he saw Tabor get out. He had no idea Tabor was coming to the cemetery that day and received no telephone call from him or information from his daughter regarding a telephone call from Tabor.

Upon getting out of the car, Tabor told defendant that he was going to kill him; although defendant told Tabor that he

---

State v. Johnson

---

wanted no trouble, Tabor "lunged for him". A scuffle ensued and Tabor was getting the better of defendant until defendant struck Tabor on his head with the rifle butt. Tabor stated again that he was going to kill defendant and when he made a further "dive" for defendant, defendant shot him in self-defense.

The jury returned a verdict of guilty of voluntary manslaughter. From judgment imposing a prison sentence of 12 to 15 years, defendant appealed.

Further facts pertinent to a decision of this case are set forth in the opinion.

*Attorney General Edmisten, by Associate Attorney Thomas H. Davis, Jr., for the State.*

*Van Winkle, Buck, Wall, Starnes, Hyde and Davis, by Herbert L. Hyde, and G. Edison Hill, for defendant appellant.*

BRITT, Judge.

By his assignments of error 1 through 5, defendant contends the trial court erred in rulings on evidence. Suffice it to say, we have carefully considered these assignments but finding no merit in any of them, they are all overruled.

By his assignments of error Nos. 6, 24 and 25, defendant contends the court erred in failing to direct a verdict of not guilty and in failing to set the verdict aside for the reason that the evidence was not sufficient to survive the motion for nonsuit and to support the verdict. We find no merit in these assignments and hold that the evidence was sufficient to take the case to the jury and to support the verdict returned.

By his assignments of error Nos. 7, 8, 11 and 12, defendant contends the trial court erred in its instructions to the jury by misstating evidence and expressing opinions on the evidence. We find no merit in any of these assignments.

[1] Under these assignments defendant argues that His Honor failed to reiterate certain testimony favorable to defendant and gave over-emphasis to certain testimony favorable to the State. We do not find this argument persuasive. "The general rule is that objections to the charge in stating the contentions of the parties or recapitulating the evidence must be called to the court's

attention in apt time to afford opportunity for correction, in order that an exception thereto will be considered on appeal." 4 Strong's N.C. Index 3d, Criminal Law § 163, p. 837. The record does not disclose that defendant made objections to the recapitulation of the evidence at trial, therefore, we will not consider them here. After a careful review of the instructions complained of, we conclude that the trial judge did not express an opinion on the evidence in violation of G.S. 1-180.

Under these assignments defendant argues that the trial judge gave erroneous instructions on the law. It suffices to say that we have carefully reviewed the instructions challenged here and conclude that they are free from prejudicial error.

Defendant challenges the correctness of other portions of the jury charge and also argues that the trial judge failed to give adequate instructions on certain points vital to his defense. We have given due consideration to all of these contentions but conclude that they have no merit. All assignments of error to the jury charge are overruled.

[2] By his assignment of error No. 27, defendant contends the misconduct of the jury officer entitles him to a new trial. On this aspect of the case, the record reveals:

After the jury and alternates were selected and impaneled, the trial judge entered an order that the jury and alternates be sequestered during court session hours. He appointed Windell A. Crisp jury officer with instructions that he keep all jurors together, separate and apart from all other persons, during court session hours throughout the trial; that he not permit any person, directly or indirectly, to approach or contact any of the jurors; and that he arrange and provide for meals, refreshments and such other accommodations as might in his judgment be reasonably necessary for the comfort and convenience of the jurors while so sequestered. The court specifically ordered that during the trial jurors should not talk to anyone about the case or let it be discussed in their presence until the case was given to them for consideration and verdict under the charge of the court.

The trial of the case began on Monday, 7 March 1977, and continued until Thursday, 10 March 1977, when a verdict was returned and judgment was entered. Defendant gave notice of appeal and appeal entries were entered on 10 March 1977.

On 14 March 1977 defendant filed a motion asking the court to vacate the judgment entered, and verdict returned by the jury, on 10 March 1977 and grant defendant a new trial. The motion was based on alleged misconduct on the part of Crisp, the jury officer, which took place around 11:20 a.m. on 10 March 1977 immediately after the court had completed its instructions to the jury and they had retired to their room to consider the verdict. The motion was supported by affidavits which tended to show:

For some period of time prior to the trial, Crisp had served as a part-time or special deputy sheriff of Swain County. During the course of the trial Crisp wore the uniform and insignia of a deputy sheriff and carried a badge, gun and ammunition similar to that worn and carried by the sheriff of Swain County and his deputies. Swain County Sheriff Wiggins was a principal witness for the State in the trial of the case and a substantial issue during the trial was the credibility of the sheriff as opposed to that of defendant. During arguments to the jury, defense counsel strenuously criticized, and the district attorney strenuously defended, the quality of the investigation of the case conducted by the sheriff and other law enforcement officers.

Immediately after the court concluded its instructions to the jury, discharged the remaining alternate juror, and sent the jury to their room to deliberate on their verdict, Crisp went into the room with the jury, and in the presence of the entire jury made comments about the case that were inflammatory and prejudicial to defendant. The remarks made by Crisp were calculated to deny defendant a fair trial by an impartial jury as guaranteed by the Federal and State Constitutions.

In an affidavit, Bruce Medford, one of the jurors, stated that Crisp "came into the jury room and said I was glad of one thing that the State took up for the law enforcement officers instead of tearing them down like the defense did; that may not be the exact words but they are the substance of what he said". By affidavit another juror stated that Crisp "came into the jury room and said that he was glad or appreciated or was proud that the attorney had commented on upholding the actions of the officers in the investigation of the case . . . . "

In his answer to the motion for a new trial, the district attorney admitted that on one occasion during the trial Crisp "made

a comment in the presence of one or more members of the jury in substance that he was proud or glad that the District Attorney for the State in his argument to the jury stood up for the law enforcement officers of Swain County". In his affidavit Crisp admitted that at one time during the trial, in the presence of one or more jurors, he stated that "I am glad Marcellus (the district attorney) stood up for law enforcement".

Defendant set forth in his motion that the alleged misconduct of the jury officer did not come to the attention of defendant's attorneys until Friday evening, 11 March 1977, after court had adjourned for the session.

Defendant served notice that he would ask for a hearing on his motion for a new trial before the judge presiding over a session of superior court being held in Graham County on 14 March 1977. On 14 April 1977 Judge Hasty filed an order reciting that the motion was heard by him in Cherokee County (Swain, Graham and Cherokee Counties all being in the Thirtieth District) during the 28 March 1977 Session of the Court; that immediately following the entry of judgment against defendant in Swain County on 10 March 1977, defendant gave notice of appeal and appeal entries were entered; and that immediately thereafter the session of court at which defendant was tried and sentenced was adjourned. Judge Hasty concluded that he did not have jurisdiction to entertain and pass upon defendant's motion, therefore, the motion was dismissed. Defendant appealed from that order.

We think Judge Hasty correctly concluded that he did not have jurisdiction to "entertain and pass upon" defendant's motion for a new trial, but we think he erred in dismissing the motion.

> "As a general rule, an appeal takes a case out of the jurisdiction of the trial court. Thereafter, pending the appeal, the judge is *functus officio*. '. . . (A) motion in the cause can only be entertained by the court where the cause is.' Exceptions to the general rule are: (1) notwithstanding notice of appeal a cause remains *in fieri* during the term in which the judgment was rendered, (2) the trial judge, after notice and on proper showing, may adjudge the appeal has been abandoned, (3) the settlement of the case on appeal." *Wiggins v. Bunch*, 280 N.C. 106, 108, 184 S.E. 2d 879, 880 (1971), *pet. for rehearing denied*, 281 N.C. 317 (1972), quoting from *Machine Co. v. Dixon*, 260 N.C. 732, 133 S.E. 2d 659 (1963).

It is clear that defendant's motion did not come within any of the exceptions set forth in *Wiggins*. We are advertent to the amendments to G.S. Chapter 15A enacted by Chapter 711 of the 1977 Session Laws, and particularly the new G.S. 15A-1414 (c) which appears to modify the rule in *Wiggins*; however, those amendments are not effective until 1 July 1978.

G.S. 15-174 provides that "[t]he courts may grant new trials in criminal cases when the defendant is found guilty, under the same rules and regulations as in civil cases". G.S. 1A-1, Rule 59(a), provides in pertinent part:

> "A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:
>
> (1) Any irregularity by which any party was prevented from having a fair trial; . . . . "

Rule 59(b) provides: "*Time for motion.*—A motion for a new trial shall be served not later than 10 days after entry of the judgment."

While defendant has not cited, and our research has not revealed, a case directly on point with the case at hand, we think decisions of our Supreme Court emphasizing the sanctity of the jury room are instructive.

In *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975), the court awarded a new trial for the reason that an alternate juror was permitted in the jury room after deliberations had begun. We quote from the opinion (page 623, 531):

> ". . . [T]here can be no doubt that the jury contemplated by our Constitution is a body of twelve persons who reach their decision in the privacy and confidentiality of the jury room. There can be no question that the presence of an alternate juror in the jury room after a criminal case has been submitted to the regular panel of twelve is always error. The requirements of G.S. 9-18 and N.C. Const. art. 1, § 24, and similar statutes and constitutional provisions in other jurisdictions, are mandatory. . . .
>
> "The rule formulated by the overwhelming majority of the decided cases is that the presence of an alternate, either

during the entire period of deliberation preceding the ver-
dict, *or* his presence at any time during the *deliberations* of
the twelve regular jurors, is a fundamental irregularity of
constitutional proportions which requires a mistrial or
vitiates the verdict, if rendered. . . . "

The court held that the presence of an alternate juror in the jury
room during the jury's deliberations constitutes reversible error
*per se.*

The decision of the Supreme Court in *Bindyke* was followed
by this court in *State v. Rowe,* 30 N.C. App. 115, 226 S.E. 2d 231
(1976).

We think defendant's motion *alleges* an irregularity as con-
templated by Rule 59(a)(1) which could have prevented him from
receiving a fair trial. However, a hearing should be held on the
motion, facts found and a determination made by a judge of the
Superior Court as to whether there was an irregularity and, if so,
if it prevented defendant from having a fair trial.

We do not presume to pass upon the merits of defendant's
motion. We merely hold that, in our opinion, he has filed a proper
motion under Rule 59(a)(1), that he filed his motion within the
time allowed by Rule 59(b), and that he is entitled to a proper
hearing on the motion. *See generally* Wright & Miller, Federal
Practice and Procedure: Civil § 2873 (1973). Quoted in *Sink v.
Easter,* 288 N.C. 183, 199, 217 S.E. 2d 532 (1975).

Consequently, the order filed 14 April 1977 dismissing de-
fendant's motion for a new trial is vacated and this cause is
remanded to the Superior Court of Swain County for a hearing
on, and a determination of, defendant's motion for a new trial.

No error in trial.

Order dismissing motion for a new trial vacated and cause
remanded.

Judges HEDRICK and ARNOLD concur.